## Appeal of STEINER COAL CO.                    Docket No. 1325.

In the absence of proof of value on March 1, 1913, the admitted cost of assets acquired in 1902 is the basis for computing unextinguished useful value on December 31, 1916.

Submitted February 25, 1925; decided March 18, 1925.

*Adrian C. Humphrey, Esq.*, for the taxpayer.

*Ward Loveless, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

### FINDINGS OF FACT.

1. The taxpayer, an Ohio corporation, was organized in 1900 and operated for about three years as the Indian Run Coal Mining Co. and thereafter, including the years involved in this appeal, as the Steiner Coal Co. From the date of its organization to about January 1, 1909, the taxpayer was engaged in the business of mining coal and also that of a wholesale and retail dealer in coal. Since about January 1, 1909, it has not been in the business of mining coal.

2. During the period from 1900 to 1903, the taxpayer acquired the Indian Run Coal mine and certain lands in fee, leases of other coal lands, equipment, and material which it used in the operation of its coal mine. The equipment then acquired, hereinafter referred to as the facilities, included a railroad spur 2 or 3 miles long, railway sidetracks, a tipple with all the usual appurtenances pertaining thereto, scales, screens, boilers, engines, drums, mine cars, pumps, ventilating equipment, rope haulage and accessories, blacksmith shop and tools, weighman's house, store buildings, mine tracks, wagons, plows, scrapers, 7 mules, 7 sets of harness, 20 acres of land in fee, several houses and a barn, a machine shop, and many other articles and supplies for use in opening and operating its coal mine. The books of the taxpayer show, and the Commissioner admits, that the cost of the facilities acquired prior to 1903 was $75,204.09.

3. Included in the facilities were about 3 miles of main-line railroad track, and certain additional mine switches valued at $24,845.63, to which the taxpayer had no title in fee and that reverted to the Wheeling & Lake Erie Railway Co. on the abandonment of the mine; 20 acres of land, valued at $1,800, owned in fee by the taxpayer; and 7 mine mules, valued at $1,400, which the taxpayer admitted at the hearing should not have been included in the list of assets alleged to have been abandoned in 1917.

4. All the coal that profitably could be recovered from the lands owned and leased by the taxpayer, contiguous to its mine, was extracted prior to January 1, 1909, and, at about that date, the taxpayer's mine was closed down, all mining operations were discontinued and have never been resumed. At the time of discontinuing its mining operations, and for some years thereafter, the taxpayer had leases or options to lease certain other coal lands, and, because it expected later to open up such additional lands for the production of coal, the facilities hereinbefore enumerated were not removed, but tools and equipment were stored, machinery was greased, and other things were done for the purpose of preserving their useful value.

5. For the purpose of enabling it to enter or develop and operate its additional coal lands held by lease or option to lease, the taxpayer made many unsuccessful attempts to secure a lease on a tract of land between its mine and its undeveloped property. Some time prior to January 1, 1917, the effort to lease the intervening tract, essential to further mining operations by the taxpayer, was abandoned, whereupon, some time in 1917, the facilities, none of which was used in mining operations after about January 1, 1909, were scrapped, salvaged, and sold for junk.

6. The taxpayer had no uniform rule for depreciating the book value of the facilities used in operating its mine. Production of coal from the property was discontinued in 1909. The facilities, carried on the books of the taxpayer at $75,204.09 as of that date, had not been increased by additions subsequent to their purchase in 1902, nor had their book value been reduced by writing off any deductions for depreciation. When the mine was closed down in 1909, the board of directors of the taxpayer decided to write off the value of the mining facilities over a period of 10 years. The reasons for this decision are set forth in a letter addressed by the president of

the taxpayer to the Commissioner on September 14, 1921, and are as follows:

Had the company in 1909 or 1910 written in its total loss, or practically total loss of $75,582.09 it would have affected its financial standing to such an extent that the interests of its stockholders would unquestionably have been jeopardized, and possible bankruptcy proceedings would have followed. Hence in the situation it seemed the wise thing for its board of directors, all of whom were successful business men, that the best course to be pursued was to write this loss off in periods of ten years, thus enabling the company to absorb the same out of its yearly profits, and this course was pursued. The property was, so far back as 1909, found and determined to be a total loss, save and except what the company might be able to secure from the sale of its land and few physical assets, and in that situation the question was, as above stated, whether the entire loss should be written off at that time or whether the same should be apportioned over a period of ten years, which was done.

7. In its appeal, the taxpayer asserts that the facilities had an unextinguished useful value of $55,078.17 on March 1, 1913, and claims the right to use that amount as the correct basis in determining depreciation for subsequent years, and in ascertaining the loss sustained by it when the facilities were finally junked in 1917. This alleged value as of March 1, 1913, was the result of an estimate made by the officers of the taxpayer in January or February, 1925. By the application of a composite depreciation rate of 7½ per cent for the four years subsequent to March 1, 1913, the taxpayer estimates that the sound and useable value of its mine facilities was $38,554.72 on January 1, 1917, the date on which the property was finally abandoned and junked.

8. In making its income-tax return for 1917, the taxpayer did not claim a loss for that year of $38,554.72, less amount obtained by salvage and sale of the property as junk, but deducted the amount of $13,898.75 from its gross income as depletion of its mining property during the year 1916. Upon auditing the taxpayer's income tax returns for 1917, 1918, and 1919, the Commissioner disallowed the alleged depletion for 1917 and smaller amounts taken by the taxpayer for depreciation in 1918 and 1919, and found an additional tax liability of the taxpayer of $6,319.30.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

LANSDON: From a mass of somewhat confusing evidence, it appears:

(1) That the facilities in question were acquired prior to 1903 at a cost of $75,240.09; (2) that the mine in the operation of which the facilities were used was closed down about the 1st of January, 1909, and never operated thereafter; (3) that the facilities were not removed from about and within the mine until some time in 1917, when they were scrapped, some parts abandoned, and others sold as junk; (4) that the taxpayer claims that the facilities had a useful value of $55,078.17 on March 1, 1913, and a depreciated value of $38,554.72 on December 31, 1916; and (5) that the Commissioner

contends that the facilities were abandoned about January 1, 1909, and had no value from that date.

It is obvious that the only matter for the consideration of the Board in this appeal is what value, if any, the coal mining facilities abandoned and junked by the taxpayer in 1917 had at that date. The taxpayer denies abandonment in 1909, and, at the hearing, offered evidence to prove that the facilities were preserved in useful condition from that date until some time in 1917. The Commissioner denies that the facilities had any unextinguished value in 1917, and asserts that, as a matter of fact, they were abandoned in 1909, and thereafter had no value.

The taxpayer deducted $13,898.75 as depletion from its gross income in making its income-tax return for 1916. At the hearing it admitted that the deduction for that year should have been claimed for loss of useful value of the property then abandoned. From this it appears either that the taxpayer was entitled to deduct $38,554.72, less amounts realized from salvage from its gross income of 1917, or, in the absence of proof of unextinguished value at that date, should be denied any deduction therefrom.

The taxpayer asserts that the facilities in question had a sound value of $55,078.17 on March 1, 1913. By the application of an annual depreciation rate of 7½ per cent to that amount, it arrived at an unextinguished useful value of $38,554.72 on December 31, 1916. The evidence in support of this conclusion is not persuasive. The alleged value at March 1, 1913, was not determined by the application of a regular depreciation rate to the known cost of the property. No appraisal was made by actual survey and inventory in 1913. Nor was there a retrospective valuation appraisal by competent and disinterested parties at any subsequent date. The basis for the alleged 1913 value is a mere estimate made by interested persons, the officers of the taxpayer, in January or February, 1925. The Board, therefore, holds that the taxpayer has failed to prove a value of $55,078.17 as of March 1, 1913, or of $38,554.72 as of December 31, 1916.

No value as of March 1, 1913, having been proved by the evidence, some other means must be employed to ascertain what value, if any, these mining facilities had on December 31, 1916. The value claimed by the taxpayer as of March 1, 1913, not having been established, the admitted cost at date of installation must be made the basis for computing the unextinguished value on December 31, 1916.

The Commissioner and the taxpayer agree that the original cost of the facilities in question was $75,204.09 in 1902. The taxpayer depreciates its asserted value of March 1, 1913, by the application of an annual depreciation rate of 7½ per cent. Good accounting practice supports this rate. It would seem to be entirely fair to apply the rate used by the taxpayer in determining depreciation for four years on the alleged 1913 value to the period from 1902 to 1917. If this is done, the entire cost of the facilities in question is extinguished prior to January 1, 1917.

Having determined that the facilities had no unextinguished value on January 1, 1917, it is hardly necessary for the Board to pass on the contention of the Commissioner that the mine in question was abandoned on or about January 1, 1909, and that the

facilities had no value from that date.   It is only fair to say, however, that the admission of the taxpayer in the letter which its president addressed to the Commissioner on September 14, 1921, virtually concedes this point.   The Commissioner's further contention that railroad tracks and switches, to which the taxpayer had no title in fee; the 20 acres of land which it owned in fee; and the 7 mine mules can not be regarded as depreciable assets of the taxpayer, the Board considers well founded, and holds that their value should be subtracted from the cost of the facilities before any computations as to 1917 value are made, but, as we have found that the entire value of all the facilities was extinguished prior to 1917, this point is not material to our decision.