*823 OPINION.
Lansdon:
From a mass of somewhat confusing evidence, it appears :
(1) That the facilities in question were acquired prior to 1903 at a cost of $75,240.09; (2) that the mine in the operation of which the facilities were used was closed down about the 1st of January, 1909, and never operated thereafter; (3) that the facilities were not removed from about and within the mine until some time in 1917, when they were scrapped, some parts abandoned, and others sold as junk; (4) that the taxpayer claims that the facilities had a useful value of $55,078.17 on March 1, 1913, and a depreciated value of $38,554.72 on December 31,1916; and (5) that the Commissioner *824 contends that tbe facilities were abandoned about January 1, 1909, and bad no value from that date.
It is obvious that the only matter for the consideration of the Board in this appeal is what value, if any, the coal mining facilities abandoned and junked by the taxpayer in 1911 had at that date. The taxpayer denies abandonment in 1909, and, at the hearing, offered evidence to prove that the facilities were preserved in useful condition from that date until some time in 1917. The Commissioner denies that the facilities had any unextinguished value in 1917, and asserts that, as a matter of fact, they were abandoned in 1909, and thereafter had no value.
The taxpayer deducted $13,898.75 as depletion from its gross income in making its income-tax return for 1916. At the hearing it admitted that the deduction for that year should have been claimed for loss of useful value of the property then abandoned. From this it appears either that the taxpayer was entitled to deduct $38,554.72, less amounts realized from salvage from its gross income of 1917, or, in the absence of proof of unextinguished value at that date, should be denied any deduction therefrom.
The taxpayer asserts that the facilities in question had a sound value of $55,078.17 on March 1, 1913. By the application of an annual depreciation rate of 7% per cent to that amount, it arrived at an unextinguished useful value of $38,554.72 on December 31, 1916. The evidence in support of this conclusion is not persuasive. The alleged value at March 1, 1913, was not determined by the application of a regular depreciation rate to the Imown cost of the property. No appraisal was made by actual survey and inventory in 1913. Nor was there a retrospective valuation appraisal by competent and disinterested parties at any subsequent date. The basis for the alleged 1913 value is a mere estimate made by interested persons, the officers of the taxpayer, in January or February, 1925. The Board, therefore, holds that the taxpayer has failed to prove a value of $55,078.17 as of March 1, 1913, or of $38,554.72 as of December 31, 1916.
No value as of March 1,1913, having been proved by the evidence, some other means must be employed to ascertain what value, if any, these mining facilities had on December 31, 1916. The value claimed by the taxpayer as of March 1, 1913, not having been established, the admitted cost at date of installation must be made the basis for computing the unextinguished value on December 31, 1916.
The Commissioner and the taxpayer agree that the original cost of the facilities in question was $75,204.09 in 1902. The taxpayer depreciates its asserted value of March 1, 1913, by the application of an annual depreciation rate of 11/2 per cent. Good accounting practice supports this rate. It would seem to be entirely fair to apply the rate used by the taxpayer in determining depreciation for four years on the alleged 1913 value to the period from 1902 to 1917. If this is done, the entire cost of the facilities in question is extinguished prior to January 1, 1917.
Having determined that the facilities had no unextinguished value on January 1, 1917, it is hardly necessary for the Board to pass on the contention of the Commissioner that the mine in question was abandoned on or about January 1, 1909, and that the *825 facilities had no value from that date. It is only fair to say, however, that the admission of the taxpayer in the letter which its president addressed to the Commissioner on September 14, 1921, virtually concedes this point. The Commissioner’s further contention that railroad tracks and switches, to which the taxpayer had no title in fee; the 20 acres of land which it owned in fee; and the 7 mine mules can not be regarded as depreciable assets of the taxpayer, the Board considers well founded, and holds that their value should be subtracted from the cost of the facilities before any computations as to 1917 value are made, but, as we have found that the entire value of all the facilities was extinguished prior to 1917, this point is not material to our decision.